[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 09-12544

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JULY 28, 2010
JOHN LEY
CLERK

Agency No. TSCA NO. 07-02

JOHN P. VIDIKSIS,

Petitioner,

versus

ENVIRONMENTAL PROTECTION AGENCY,

Respondent.

Petition for Review of a Decision
of the Environmental Appeals Board

(July 28, 2010)

Before EDMONDSON and CARNES, Circuit Judges, and GOLDBERG,* Judge.

---

* Honorable Richard W. Goldberg, Judge. United States Court of International Trade, sitting by designation.

GOLDBERG, Judge:

In 2005, the United States Environmental Protection Agency ("EPA") filed an administrative complaint against Petitioner John P. Vidiksis. The complaint alleged 69 violations of the Toxic Substances Control Act section 409, 15 U.S.C. § 2689; the Residential Lead-Based Paint Hazard Reduction Act of 1992, 42 U.S.C. §§ 4851-4856; and the federal regulations promulgated thereunder. An Administrative Law Judge for the EPA ("ALJ") found Vidiksis liable on each of the 69 counts and assessed a civil penalty of $97,545. On appeal, the Environmental Appeals Board ("EAB") affirmed the decision of the ALJ as to the liability finding and the penalty amount. Vidiksis has now appealed to this court. As explained further below, we AFFIRM the EAB's ruling on liability and on the penalty amount.

## BACKGROUND

Recognizing the dangers of lead-based paint, Congress passed the Residential Lead-Based Paint Hazard Reduction Act of 1992 ("Lead Hazard Act"). Pub. L. No. 102-550, Title X, 106 Stat. 3672 (1992) (codified at 42 U.S.C. §§ 4851-4856 (2006)). The Lead Hazard Act authorized the EPA to promulgate regulations regarding the "disclosure of lead-based paint hazards in target housing which is offered for sale or lease." Lead Hazard Act § 1018(a); 42 U.S.C. §

2

4852d(a)(1). Accordingly, the EPA promulgated the Real Estate Notification and Disclosure Rule ("Disclosure Rule") in 1996. Lead; Requirements for Disclosure of Known Lead-Based Paint and/or Lead-Based Paint Hazards in Housing: Final Rule, 61 Fed. Reg. 9064 (Mar. 6, 1996) (codified at 40 C.F.R. Pt. 745, Subpart F and 24 C.F.R. Pt. 35, Subpart A). Under the Disclosure Rule, lessors and sellers are required to provide lessees and purchasers of "target housing" with certain information. See 40 C.F.R. §§ 745.107, 745.113. "Target housing" is defined as "any housing constructed prior to 1978...."[1] 40 C.F.R. § 745.103. The Lead Hazard Act provides that a violation of the Disclosure Rule is considered a prohibited act under section 409 of the Toxic Substances Control Act ("TSCA"). 42 U.S.C. § 4852d(b)(5). Under TSCA, the EPA has the authority to seek civil penalties for failure to comply with the Disclosure Rule. Id.[2]

Vidiksis, a resident of Georgia,[3] owns multiple residential properties in York, Pennsylvania. The violations on appeal relate to leases entered into for sixteen of these properties. The leases used by Vidiksis contained the following

---

[1]It is not disputed that the housing in question was "target housing."

[2] 42 U.S.C. § 4852d(b)(5) limits the penalty for each violation to $10,000. This was increased to $11,000 for any violation occurring after July 28, 1997. 40 C.F.R. § 19.4.

[3]Because Vidiksis is a resident of Georgia, this court has jurisdiction over the dispute pursuant to 15 U.S.C. § 2615(a)(3) (2006).

notice:

> **Lead Paint Notice.**  Tenant acknowledges that the leased premises may have been constructed before 1978, and may contain lead-based paint. Ingestion of paint particles containing lead may result in lead poisoning which can cause major health problems, especially in children under 7 years of age.  In the event the Tenant or any family members or guests should develop lead poisoning, and it is determined that corrective measures are required to remedy the source of the lead poisoning, the cost of such remedy shall be at the sole expense of the Tenant.  In the event that Tenant is either unwilling or unable to perform corrective measures, Tenant shall have the option at the discretion of the Landlord to terminate the lease with a written 30 day notice and providing Landlord with written verification of source of lead.

The lease documents and disclosures were prepared by professional real estate agents in Pennsylvania hired by the Petitioner.[4]  Accompanying each lease was a pamphlet published by the EPA that went into further detail regarding the dangers of lead poisoning.

The administrative complaint filed by the EPA alleged 30 violations of 40 C.F.R. § 745.113(b)(1)–requiring a "Lead Warning Statement" with language regarding potential lead paint related health problems.  Section 745.113(b)(1) specifically requires a Lead Warning Statement with the following language:

> Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead

---

[4]A complaint was also brought against the real estate agents for these transactions.  The EPA settled the complaint for a civil penalty of $5,000.

exposure is especially harmful to young children and pregnant women. Before renting pre–1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.

It was found that Vidiksis's notice did not contain this exact language, and therefore, violated the regulatory requirement. The penalty assessed in relation to these violations was $36,264.

The complaint also alleged that 34 transactions[5] utilizing leases with this Notice violated 40 C.F.R. § 745.113(b)(2)–requiring "[a] statement by the lessor disclosing the presence of known lead-based paint and/or lead-based paint hazards in the target housing being leased or indicating no knowledge of the presence of lead-based paint and/or lead-based paint hazards." The ALJ found, and the EAB confirmed, that Vidiksis's notice did not effectively disclose his knowledge or lack of knowledge of lead-based paint. Rather, Vidiksis merely stated that there <u>may</u> be lead-based paint on the premises. The penalty assessed in relation to these particular violations totaled $57,024.[6]

---

[5]The transactions included each new lease, as well as any time the tenant was informed of an increase in rent.

[6]Vidiksis was also found to have violated three additional provisions of the Disclosure Rule and was assessed a civil penalty of $4,254 for those violations. Vidiksis does not challenge those liability findings. He does, however, challenge the total penalty amount, which includes the penalties imposed for those violations.

## STANDARD OF REVIEW

In reviewing an agency action, the court must set aside any findings or conclusions if they are "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); Legal Envtl. Assistance Found. v. EPA, 118 F.3d 1467, 1473 (11th Cir. 1997). In making this determination, "the court must consider whether the decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971).

Additionally, an agency's interpretation of its own regulations is "controlling unless plainly erroneous or inconsistent with the regulation." Sierra Club v. Johnson, 436 F.3d 1269, 1274 (11th Cir. 2006) (quoting Auer v. Robbins, 519 U.S. 452, 461 (1997)). The interpretation will be upheld "so long as it is reasonable, that is, so long as the interpretation sensibly conforms to the purpose and wording of the regulations." Id. (quoting Legal Envtl. Assistance Found., 276 F.3d at 1262.). This deference is applied "even if [the agency's] interpretation is not the best or most natural one by grammatical or other standards." Id.

Regarding a penalty assessment, an agency's determination is considered to be particularly within the agency's competence. Butz v. Glover Livestock

Comm'n Co., 411 U.S. 182, 185 (1973); Lowe v. F.D.I.C., 958 F.2d 1526, 1534 n.30 (11th Cir. 1992). "Only if the remedy chosen is unwarranted in law or is without justification in fact should a court attempt to intervene in the matter." Am. Power & Light Co. v. SEC, 329 U.S. 90, 112-13 (1946).

Vidiksis's challenge to the validity of the regulations themselves is assessed under the framework established by the Supreme Court in Chevron, USA, Inc. v. NRDC, Inc., 467 U.S. 837, 842-45 (1984). First, the court considers "whether Congress has directly spoken to the precise question at issue." Id. at 842. If so, the plain terms of the statute must be applied by the agency. Id. at 842-43. If Congress was ambiguous in its statement, the court must determine whether the agency based its interpretation "on a permissible construction of the statute." Id. at 843. The resulting regulations promulgated by an agency "are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." Id. at 844. In making this determination, "[t]he court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction, or even the reading the court would have reached if the question initially had arisen in a judicial proceeding." Id. at 843 n.11.

# DISCUSSION

## I. Challenge to the Validity of the Regulations

As a preliminary matter, Vidiksis challenges the regulations at issue promulgated by the EPA, 40 C.F.R. §§ 745.113(b)(1) and (2),[7] as arbitrary and capricious. He claims that Congress's statutory mandates were not ambiguous, and that the agency failed to follow the plain language of the statute in creating the regulations at issue. He states that the purpose of the Lead Hazard Act was to disclose the existence of lead-based paint and to warn of the dangers of that paint. See 42 U.S.C. § 4852d. According to the argument, the regulations promulgated by the EPA did not fulfill this purpose. The EPA responds by arguing that Vidiksis is not permitted to make this argument because it has been either time-

---

[7]40 C.F.R. § 745.113(b) reads:
(b) Lessor requirements. Each contract to lease target housing shall include, as an attachment or within the contract, the following elements, in the language of the contract (e.g., English, Spanish):
> (1) A Lead Warning Statement with the following language:
>> Housing built before 1978 may contain lead-based paint. Lead from paint, paint chips, and dust can pose health hazards if not managed properly. Lead exposure is especially harmful to young children and pregnant women. Before renting pre–1978 housing, lessors must disclose the presence of lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention.
> (2) A statement by the lessor disclosing the presence of known lead-based paint and/or lead-based paint hazards in the target housing being leased or indicating no knowledge of the presence of lead-based paint and/or lead-based paint hazards. The lessor shall also disclose any additional information available concerning the known lead-based paint and/or lead-based paint hazards, such as the basis for the determination that lead-based paint and/or lead-based paint hazards exist, the location of the lead-based paint and/or lead-based paint hazards, and the condition of the painted surfaces.

8

barred or waived. The EPA attempts to portray the regulations as a rule promulgated under the TSCA, which limits challenges to regulations to be brought "not later than 60 days after the date of promulgation." 15 U.S.C. § 2618(a)(1)(A). As an alternative, the EPA claims that the six-year statute of limitations under the Federal Tort Claims Act applies. See 28 U.S.C. § 2401(a). The EPA also believes that the challenge to the regulations is waived because Vidiksis did not raise the argument in the administrative proceedings below.

Even should Vidiksis's challenge to the regulations be permitted at this time, it has no merit. With respect to § 745.113(b)(1), Vidiksis seems to argue that the EPA did not have the authority to craft a regulation requiring specific language in the lease. However, the Lead Hazard Act contained specific language to be provided in sales transactions. 42 U.S.C. § 4852d(a)(3). The EPA and the Department of Housing and Urban Development ("HUD") concluded that such language was "necessary to include…in leases as well" 61 Fed. Reg. 9064, 9071. Given that the stated purposes of the Lead Hazard Act include "ensur[ing] that the existence of lead-based paint hazards is taken into account in the development of Government housing policies and in the sale, rental, and renovation of homes and apartments," as well as "educat[ing] the public concerning the hazards and sources of lead-based paint poisoning," it is not arbitrary or capricious for the EPA to have

9

crafted regulations requiring a lead warning statement applicable to rental housing. 42 U.S.C. § 4851a(4), (7).

Vidiksis also challenges the EPA's authority to promulgate § 745.113(b)(2), which requires leases to include "[a] statement by the lessor disclosing the presence of known lead-based paint . . . in the target housing being leased <u>or indicating no knowledge of the presence of lead-based paint</u>. . . ." 40 C.F.R. § 745.113(b)(2) (emphasis added). The Lead Hazard Act authorizes the EPA and HUD to promulgate regulations requiring sellers and lessors to "disclose to the purchaser or lessee the presence of any known lead-based paint . . . in such housing." 42 U.S.C. § 4852d(a)(1)(B). Vidiksis contends that the EPA exceeded its authority by obligating lessors to make a "no knowledge" declaration because § 4852d(a)(1)(B) expressly requires only that the promulgated regulations require lessors to disclose to lessees "the presence of any known lead-based paint." We believe that it was reasonable for the EPA to require that lessors also make a "no knowledge" declaration if they did not know whether there was lead-based paint. The declaration provides lessees with more information than they would otherwise have. Without the requirement, when the lessor made no declaration, the lessee would not know whether the lessor knew there was no lead-based paint or lacked

knowledge as to whether there was any. The requirement prevents the silence of the lessor from being ambiguous.

Contrary to Vidiksis's arguments, these regulations are not arbitrary or capricious.

II. Violations

As outlined above, there are two basic categories of violations for the purposes of this appeal: 1) violations of 40 C.F.R. § 745.113(b)(1)—failure to include the specific regulatory language warning tenants of potential lead paint health problems, and 2) violations of 40 C.F.R. § 745.113(b)(2)—failure to state either that lead hazards exist at the site or that the owner has no knowledge of any lead hazards.

A. Failure to Warn Tenants of Potential Lead Paint Health Problems

The EAB interpreted § 745.113(b)(1) to require lessors to use the exact language of the Lead Warning Statement provided in the regulatory text. Although the leases used by Vidiksis did not contain the exact language stated in 40 C.F.R. § 745.113(b)(1), Vidiksis contends that he complied with the requirement because his leases communicated all of the same elements outlined in the language of § 745.113(b)(1).

The text of the regulation is clear. Section 745.113(b)(1) plainly states that "[e]ach contract to lease target housing shall include…[a] Lead Warning Statement with the following language…." (emphasis added). Vidiksis simply did not have that precise language in his leases, as required by the regulation.

Vidiksis argues that the EPA-issued pamphlet was provided to the lessees, and that it contained the required language from § 745.113(b)(1). However, as the EAB found, and as the language of the regulation dictates, providing the "federally approved pamphlet" is a separate requirement. The regulation specifically states that "[l]essees must also receive a federally approved pamphlet on lead poisoning prevention." (emphasis added). The required Lead Warning Statement cannot be satisfied through the additional requirement of providing the pamphlet. See also Final Rule: Lead; Requirements for Disclosure of Known Lead-Based Paint and/or Lead-Based Paint Hazards in Housing, 61 Fed. Reg. 9064, 9071-73 (describing the lead hazard information pamphlet as a separate component of disclosure).

The EAB's ruling in this regard was not clearly erroneous or inconsistent with the regulation.

B. <u>Failure to State Knowledge of Lead Hazards Present at the Property</u>

The bulk of the violations were based on Vidiksis's breach of § 745.113(b)(2), requiring the lessor to state either that lead paint is present at the property, or that the lessor has "no knowledge" of the presence of any lead paint at the property. The EAB interpreted this provision to require the lessor to make "one of two affirmative statements"—to either disclose what the lessor knows about lead-based paint in the housing or to affirmatively state that the lessor has no knowledge of the presence of lead-based paint and/or hazards in the housing. Vidiksis argues that his lead paint notice fulfilled his obligations under § 745.113(b)(2). He also claims that the involvement of a property management agent somehow obviates his own responsibility for compliance. <u>See</u> 42 U.S.C. § 4852d(a)(4) ("Whenever a seller or lessor has entered into a contract with an agent for the purpose of selling or leasing a unit of target housing, the regulations promulgated under this section shall require the agent, on behalf of the seller or lessor, to ensure compliance with the requirements of this section.").

Similar to the analysis for § 745.113(b)(1), § 745.113(b)(2) is also precise in its requirements for lessors—either disclosure of the presence of lead paint or a statement of "no knowledge." In the notice included in his leases, Vidiksis stated only that the premises "may contain lead-based paint," and therefore did not

13

comply with § 745.113(b)(2). A statement that the premises "may contain" lead-based paint is insufficient because it does not indicate to the lessee whether the lessor has knowledge of the presence of lead-based paint or does not know one way or the other.

While the regulations do place an onus on agents, this does not remove any responsibility from the lessor. The statutory language of 42 U.S.C. § 4852d(a)(4) does not state that the agent's responsibilities replace the seller or lessor's obligations. In addition, the corresponding regulations include provisions specifically entitled "Lessor requirements." 40 C.F.R. § 745.113(b). Under these regulations, agents are required to inform the lessor of the obligations of 42 U.S.C. § 4852d. 40 C.F.R. § 745.113(b)(5). This requirement would be unnecessary should the agent's responsibility supplant that of the lessor. Furthermore, the EAB has held that a "passive owner" defense is inconsistent with the purpose of the Disclosure Rule. See In re Harpoon P'ship, 12 E.A.D. 182, 194-95 (EAB 2005). "Permitting an owner to transfer its reporting obligations to an agent would largely defeat the purpose of the statute. Because the statute requires disclosure of known hazards, . . . allowing a knowledgeable owner to transfer its responsibilities to a less knowledgeable agent could allow informed owners to avoid disclosure altogether, thereby undermining the purpose of the statute, and

14

denying purchasers and lessees the very protection that Congress intended the statute to provide." Id.

Again, the EAB's ruling in this regard was not clearly erroneous or inconsistent with the regulation.

### III. Penalty Assessment

After determining that he was liable for all violations brought against him in the EPA's administrative complaint, Vidiksis was assessed a $97,545 civil penalty. The EPA's calculation of the penalty was based on the U.S. Environmental Protection Agency, Office of Regulatory Enforcement, Section 1018 - Disclosure Rule Enforcement Response Policy for the Lead Paint Disclosure Rule (Feb. 2000) ("ERP"). The ERP establishes a two-step process to calculate the appropriate penalty. First, a "gravity-based penalty" is determined based on the nature of the violation, the circumstances of the violation, and the extent of harm that may result from the violation. Second, the gravity-based penalty is adjusted based on various factors, including the ability to pay, history of prior violations, and degree of culpability.

On appeal, Vidiksis raises various arguments with respect to the penalty calculation. Essentially, he claims that the EPA did not consider all of the required statutory factors in assessing the penalty. These factors include "the

15

nature, circumstances, extent, and gravity of the violation or violations and, with respect to the violator, ability to pay, effect on ability to continue to do business, any history of prior such violations, the degree of culpability, and such other matters as justice may require." 15 U.S.C. § 2615(a)(2)(B).

### A. Factor – gravity

In completing the first step of the penalty analysis, the ERP employs a matrix to establish the penalty's gravity component that takes into account the violations' "extent." The matrix considers the ages of any children that were affected by the violations. Since children under the age of six are most vulnerable to lead-paint hazards, the presence of children under the age of six is considered a "major" extent factor. For the presence of children between the ages of six and seventeen, the EPA assigned the violations a "significant" extent factor. And where there were no children present, the violations were considered "minor" in the extent category. Vidiksis argues that the age consideration and its role in the extent calculation, and its impact on the gravity calculation, is improper because only adults were parties to the lease, and because he had no knowledge of which tenants had children nor of the children's ages.

Vidiksis did not raise this argument below, and therefore it is waived. "Under ordinary principles of administrative law, a reviewing court will not

16

consider arguments that a party failed to raise in timely fashion before an administrative agency." Mahon v. U.S. Dep't of Agric., 485 F.3d 1247, 1254-55 (11th Cir. 2007) (quoting Sims v. Apfel, 530 U.S. 103, 114 (2000) (Breyer, J., dissenting)). "[C]ourts should not topple over administrative decisions unless the administrative body not only has erred but has erred against objection made at the time appropriate under its practice." U.S. v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 37 (1952). We cannot disregard the importance of permitting the agency to exercise its expertise in the subject matter or ignore the administrative process that has been established below. See Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005).[8] This rationale is particularly pertinent when the below proceeding maintained an adversarial nature, as it did here, because the parties are given the opportunity to fully develop their arguments at the agency level. See Mahon, 485 F.3d at 1255.

Because of these considerations, the court declines to analyze the Vidiksis's

---

[8]"This court has described seven policy reasons for favoring an exhaustion requirement: (1) to avoid premature interruption of the administrative process; (2) to let the agency develop the necessary factual background upon which decisions should be based; (3) to permit the agency to exercise its discretion or apply its expertise; (4) to improve the efficiency of the administrative process; (5) to conserve scarce judicial resources, since the complaining party may be successful in vindicating rights in the administrative process and the courts may never have to intervene; (6) to give the agency a chance to discover and correct its own errors; and (7) to avoid the possibility that frequent and deliberate flouting of the administrative processes could weaken the effectiveness of an agency by encouraging people to ignore its procedures." Johnson v. Meadows, 418 F.3d 1152, 1156 (11th Cir. 2005) (quoting Alexander v. Hawk, 159 F.3d 1321, 1327 (11th Cir. 1998)).

17

argument as to the gravity factor.

## B. Factor – prior violations

Vidiksis argues that the EPA refused to consider his lack of prior violations in determining his penalty because the penalty amount was not adjusted downward for this consideration. However, there is no specific statutory requirement that the EPA adjust downward for lack of prior history; it simply must be considered as a factor. See 15 U.S.C. § 2615(a)(2)(B). The ERP provides for an upward adjustment for prior history. As explained in the ERP, "[t]he need for such an upward adjustment derives from the violator not having been sufficiently motivated to comply with the Disclosure Rule by the penalty assessed for the previous violation(s)." ERP at 15. Therefore, the EPA does consider "any history of prior such violations," as required under the statute. This particular interpretation by the agency–considering the presence of prior violations in terms of an upward adjustment, rather than discount for the lack of prior violations through a downward adjustment–is its prerogative. Even should the court disagree with the particular method chosen, it cannot say that this was "unwarranted in law or . . . without justification in fact." Am. Power & Light Co., 329 U.S. at 112-13.

## C. Factor – culpability

The ERP also provides for upward adjustment of the gravity-based penalty

18

based on the violator's degree of culpability. According to the ERP, "[t]he two principal criteria for assessing culpability are: (a) the violator's knowledge of the Disclosure Rule, and (b) the degree of the violator's control over the violative condition." ERP at 15. The EPA did not recommend increasing Vidiksis' penalty based on the culpability factor. The ALJ, however, thought that the evidence supported an upward adjustment based on culpability, because Vidiksis had received notices as early as 1995 that some of the properties he owned contained lead-based paint and, as the property owner, he had control over the leases' contents. Nonetheless, the ALJ decided not to impose a culpability enhancement because the EPA had not sought one, and the EAB confirmed the ALJ's decision about that.

Vidiksis contends that the real estate agent bore the responsibility for compliance under 42 U.S.C. § 4852d(a)(4). Accordingly, he argues that his penalty should have been reduced based on his lack of culpability. Vidiksis also points to the disparity between the $97,545 penalty he was assessed and the $5,000 that the real estate company was assessed.[9]

As explained above, any responsibility on behalf of the agent does not obviate the lessor's responsibility. Vidiksis's culpability was not reduced despite

---

[9]The real estate company was assessed a $5,000 penalty based on ability to pay.

the existence of any requirements on behalf of the agent.

The statute states that the degree of culpability should be a factor. The ERP clearly takes it into consideration. Simply because Vidiksis disagrees with the manner in which the agency has chosen to take it into consideration does not make the agency's interpretation arbitrary or capricious.

## CONCLUSION

Because of the foregoing reasons, the decisions rendered by the EAB on the issues at hand are AFFIRMED.