[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 14-15295

_____

D.C. Docket No. 8:13-cr-00355-CEH-TGW-1

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MICHAEL MOSHE SHIMSHONI,

Defendant-Appellant.

_____

Appeals from the United States District Court
for the Middle District of Florida

_____

(November 16, 2015)

Before TJOFLAT and HULL, Circuit Judges, and BARTLE,[*] District Judge.

PER CURIAM:

Michael Moshe Shimshoni appeals his two-year probationary sentence for

knowingly and willfully failing to provide a prescribed lead-paint warning

_____
[*]Honorable Harvey Bartle III, United States District Judge for the Eastern District of
Pennsylvania, sitting by designation.

brochure to his lessee, in violation of 15 U.S.C. §§ 2615(b), 2689, and 42 U.S.C. § 4852d(b)(5). The sole issue on appeal is whether the statutory penalty for his criminal conviction includes a probation term or is limited solely to a monetary fine. Shimshoni does not quarrel with whether his probationary term should be one year or two years; rather, he asserts no probationary term may be imposed. After careful review of the record and briefs, and with the benefit of oral argument, we affirm Shimshoni's two-year probationary sentence.

## I. BACKGROUND

A federal grand jury charged defendant-appellant Shimshoni with four counts of knowingly and willfully failing to provide federally prescribed lead-paint warning notices and federally approved lead-paint-hazard brochures to lessees at four properties he owned and managed, in violation of 15 U.S.C. §§ 2615(b) and 2689 of the Toxic Substances Control Act, 42 U.S.C. § 4852d(b)(5) of the Residential Lead-Based Paint Hazard Reduction Act ("Lead Hazard Act"), 18 U.S.C. § 2, and 40 C.F.R. §§ 745.107(a)(1) and 745.113(b)(1); and two counts of alteration or falsification of records in a federal investigation, in violation of 18 U.S.C. §§ 1519 and 2.

### A.    Offense Conduct

We recount the facts from the presentence investigation report ("PSI"). Between approximately April 2009 and March 2012, defendant Shimshoni served

2

as a property manager and lessor of various commercial and residential properties through Pinellas Properties, Inc., and various other entities.  In particular, Shimshoni leased multiple rental units in a property on 17th Avenue in St. Petersburg, Florida ("17th Avenue Property").

The 17th Avenue Property and its units qualified as "target housing" under the Toxic Substances Control Act, the Lead Hazard Act, and related federal laws and regulations.  Accordingly, defendant Shimshoni was required by federal law to provide to the tenants of the 17th Avenue Property: (1) a lead warning statement with federally prescribed language; (2) a statement disclosing the presence of any known lead-based paint; (3) a list of any records or reports of lead-based paint; and (4) a statement by each tenant affirming the receipt of a lead hazard information pamphlet approved by the Environmental Protection Agency ("EPA"), see 40 C.F.R. §§ 745.107(a)(1), 745.113(b)(1).

In summer 2011, the 17th Avenue Property's exterior paint was scraped off for the purpose of repainting.  However, the paint debris was left on the ground and not properly discarded.  The Florida Department of Environmental Protection ("FDEP") launched an investigation after receiving a complaint that the paint debris had not been properly removed and possibly contained lead.  The FDEP collected and tested paint chips and soil samples, and it determined that the paint chips exhibited the hazardous waste characteristics of toxicity for lead and that the

3

lead had leached into the soil beneath the paint chips.  The FDEP then contacted the EPA's Criminal Division with its findings.

In January 2012, an agent with the EPA and FDEP began interviewing the tenants at the 17th Avenue Property.  Subsequently, in April 2012, after completing an initial investigation, the agent served a grand jury subpoena on Pinellas Properties to provide any federally prescribed lead notifications that had been disclosed to the tenants of the 17th Avenue Property.

In May 2012, defendant Shimshoni provided to the agent the requested documents.  The agent then interviewed again the tenants for whom documents were provided.  The agent learned that Shimshoni recently visited the tenants and asked them to sign the lead notifications.  Shimshoni then back-dated the notifications before providing them to the agent.

The EPA ultimately incurred a total cost of $72,819.64 to clean up the lead-based paint and contaminated soil at the 17th Avenue Property.

**B.    Guilty Plea**

Pursuant to a plea agreement, defendant Shimshoni agreed to plead guilty to a single count of failing to provide a federally approved lead-paint-hazard brochure, a misdemeanor offense, in violation of 15 U.S.C. §§ 2615(b) and 2689, 42 U.S.C. § 4852d(b)(5), 18 U.S.C. § 2, and 40 C.F.R. § 745.107(a)(1).  As part of the plea agreement, Shimshoni admitted that on or about April 1, 2009, he

4

"knowingly and willfully" failed to provide one of his tenants with a federally approved lead-paint-hazard brochure.

The plea agreement stated that the count of failing to provide a federally approved lead-paint-hazard brochure "carries a maximum sentence of one year imprisonment, a fine of $25,000 per each day of violation, a term of supervised release of not more than one year [following release from imprisonment], and a special assessment of $25. . . ." Shimshoni agreed to pay $50,000 in restitution,[1] and the government agreed to recommend a low-end guidelines sentence at sentencing.

The plea agreement also stated that defendant Shimshoni understood the nature of the offense to which he was pleading guilty, "including the penalties provided by law." In signing the plea agreement, Shimshoni certified that he had read the agreement in its entirety, or had the agreement read to him, and that he fully understood its terms.

During the plea hearing, the district court confirmed with defendant Shimshoni that he read the written plea agreement in its entirety and signed it, and that he understood its terms. The district court explained that Shimshoni faced a maximum sentence of one year of imprisonment, a $25,000 fine, one year of

---

[1]At the time of the plea agreement, the total cost of the EPA's decontamination of the 17th Avenue Property was not available. Therefore, the parties agreed to the estimated cost, $50,000, as restitution.

supervised release following a term of imprisonment, and a special assessment of $25.[2]  After finding that Shimshoni was freely and voluntarily entering a guilty plea, the district court accepted the plea and adjudged Shimshoni guilty.

## C.    Sentencing Guidelines Calculations

The PSI recommended a base offense level of eight, pursuant to U.S.S.G. § 2Q1.2(a).  The PSI added to that base offense level a two-level increase because defendant Shimshoni obstructed, or attempted to obstruct, justice.  After a two-level reduction for acceptance of responsibility, Shimshoni's adjusted offense level was eight.  Based on this total offense level and a criminal history category of I, Shimshoni's advisory guidelines range was zero to six months' imprisonment.

In addition, the PSI specified that Shimshoni faced a statutory maximum of (1) one year of imprisonment under 15 U.S.C. § 2615(b), and (2) five years' probation for a misdemeanor conviction under 18 U.S.C. § 3561(c)(2).

Importantly here, § 3561(a) provides that, "[i]n general[,] . . . [a] defendant who has been found guilty of an offense may be sentenced to a term of probation unless . . . (1) the offense is a Class A or Class B felony and the defendant is an individual; (2) the offense is an offense for which probation has been expressly precluded; or (3) the defendant is sentenced at the same time to a term of

---

[2]Although the district court did not discuss the possibility that defendant Shimshoni could be sentenced to up to five years' probation under 18 U.S.C. § 3561(c)(2), on appeal Shimshoni makes no claim that his plea colloquy was ineffective.

imprisonment for the same or a different offense that is not a petty offense." 18 U.S.C. § 3561(a) (emphasis added).  For cases where none of these exceptions applies, the authorized terms of probation are found in § 3561(c): "(1) for a felony, not less than one nor more than five years; (2) for a misdemeanor, not more than five years; and (3) for an infraction, not more than one year." 18 U.S.C. § 3561(c) (emphasis added).

Defendant Shimshoni's PSI additionally stated that the applicable probation guideline, which covers both misdemeanor and felony offenses, stated that, if probation is imposed for defendants whose offense level is six or greater, the term should be at least one year but not more than five years, pursuant to U.S.S.G. § 5B1.2(a)(1).[3]

Shimshoni did not object to the PSI's stated maximum statutory penalties, which expressly included a term of probation up to five years.

The probation officer filed with the district court a separate sentencing recommendation, in which he recommended that Shimshoni be placed on three years' probation, be ordered to pay $50,000 in restitution to the EPA, and be ordered to pay a $5,000 fine.

---

[3]As noted in Sentencing Guidelines commentary, the Comprehensive Crime Control Act of 1984 makes probation a sentence in and of itself.  U.S.S.G. Ch. 5, Pt. B (introductory commentary) (citing 18 U.S.C. § 3561).

**D.     Sentencing**

At sentencing, defendant Shimshoni again did not object to the PSI's statement of the maximum penalties.  After ruling on objections not relevant to this appeal, the district court adopted the PSI's advisory guidelines range of zero to six months' imprisonment.

Defendant Shimshoni, through counsel, asked that the "sentence simply be the $50,000 of restitution."  In response, the government requested that the district court sentence Shimshoni to a period of probation.

The district court then sentenced defendant Shimshoni to two years of probation, $50,000 in restitution to the EPA, and a fine of $2,500.  Shimshoni objected generally "to the sentence as imposed."

## II.  DISCUSSION

On appeal, defendant Shimshoni does not challenge his fine or restitution. Rather, on appeal Shimshoni argues that the statutory maximum penalty for his criminal conviction is only a fine of up to $10,000 and that the district court erred in sentencing him to any term of probation.  In other words, defendant Shimshoni argues that the statutory maximum penalty for his criminal offense does not include any probation term at all but is limited solely to a fine up to $10,000.  The government points out that defendant Shimshoni was charged with and pled guilty to not just a civil violation of § 4852d, but to a violation of two federal statutes

8

read together, § 4852d of the Lead Hazard Act and §§ 2615(b) and 2689 of the Toxic Substances Control Act.  While § 4852d carries only a <u>civil</u> penalty, the government stresses that § 2615 contains both civil <u>and</u> criminal penalties and specifies the <u>criminal</u> penalty is up to one-year imprisonment and a $25,000 fine. Further, 18 U.S.C. § 3561(c)(2) provides for a probation term of up to five years for all misdemeanor offenses, except for a few types of offenses not at issue here.

## A.    Standard of Review

We ordinarily review the legality of a criminal sentence <u>de novo</u>.  <u>United States v. Prouty</u>, 303 F.3d 1249, 1251 (11th Cir. 2002).  However, when a defendant argues that he was sentenced above the statutory maximum for the first time on appeal, we review only for plain error.  <u>See</u> <u>United States v. Smith</u>, 532 F.3d 1125, 1129 (11th Cir. 2008).  Under plain-error review, a defendant must show (1) error (2) that is plain and (3) that affected his substantial rights.  <u>Id.</u> at 1126.  Even if the defendant meets these three conditions, we may exercise our discretion to reverse only if "the error seriously affects the fairness, integrity or public reputation of judicial proceedings."  <u>Id.</u> at 1126-27 (quotations omitted and alteration adopted).

In certain circumstances, a defendant can show plain error on direct appeal if he establishes that his sentence exceeds the statutory maximum penalty for his crime of conviction.  <u>See</u> <u>United States v. Sanchez</u>, 586 F.3d 918, 930 (11th Cir.

9

2009) (holding that, where district court plainly erred in treating defendant's prior Florida drug offenses as "serious drug offenses" under the "three-strikes law," 18 U.S.C. § 3559(c), the error affected defendant's substantial rights because it resulted in sentences of life imprisonment under § 3559(c) rather than the statutory maximum terms of 20 years' imprisonment under 21 U.S.C. § 841(b), and seriously affected the fairness, integrity, or public reputation of the judicial proceedings).

The threshold question here is determining the statutory maximum penalty for defendant Shimshoni's criminal conviction.

## B.    Statutory Scheme

As noted above, Shimshoni was convicted and sentenced under portions of the Toxic Substances Control Act ("Toxic Substances Act") and the Lead Hazard Act.  We outline the statutory scheme applicable to Shimshoni's criminal conviction.

In 1976, Congress enacted the Toxic Substances Act.  Pub. L. No. 94-469, 90 Stat. 2003 (1976) (codified at 15 U.S.C. §§ 2601, et seq.).  The primary purpose of the Toxic Substances Act was "to regulate commerce and protect human health and the environment by requiring testing and necessary use restrictions on certain chemical substances."  Id.  Congress enacted the Toxic Substances Act "because of growing fears about the risks that toxic substances posed to human health and the

environment."  David Markell, An Overview of TSCA, Its History and Key Underlying Assumptions, and Its Place in Environmental Regulation, 32 Wash. U. J. L. & Pol'y 333, 336 (2010).

Years later, in 1992, recognizing the dangers of lead-based paint, Congress also passed the Lead Hazard Act.  Pub. L. No. 102-550, Title X, 106 Stat. 3672 (1992) (codified at 42 U.S.C. §§ 4851-4856); see Vidiksis v. EPA, 612 F.3d 1150, 1152 (11th Cir. 2010).  The Lead Hazard Act authorized the EPA to promulgate regulations regarding the "disclosure of lead-based paint hazards in target housing which is offered for sale or lease."  42 U.S.C. § 4852d(a)(1); see Vidiksis, 612 F.3d at 1152-53.

Accordingly, in 1996, the EPA enacted a rule called the Real Estate Notification and Disclosure Rule ("Disclosure Rule").  Vidiksis, 612 F.3d at 1153.  Under the EPA's Disclosure Rule, lessors and sellers must provide lessees and purchasers of "target housing" "with an EPA-approved lead hazard information pamphlet."  See id.; 40 C.F.R. §§ 745.107(a)(1), 745.113; see also 15 U.S.C. § 2686.

A provision of the Lead Hazard Act, specifically 42 U.S.C. § 4852d(b)(5), further provides that a violation of any EPA rule issued under the Lead Hazard Act constitutes a "prohibited act" under the Toxic Substances Act as codified at 15

U.S.C. § 2689.  See 42 U.S.C. § 4852d(b)(5).  This § 4852d(b)(5) provision of the Lead Hazard Act specifically states as follows:

> It shall be a prohibited act under section 409 of the Toxic Substances Control Act [15 U.S.C. § 2689] for any person to fail or refuse to comply with a provision of this section or with any rule or order issued under this section.  For purposes of enforcing this section under the Toxic Substances Control Act, the penalty for each violation applicable under section 16 of that Act [15 U.S.C. § 2615] shall not be more than $10,000.

42 U.S.C. § 4852d(b)(5) (emphasis added); see also 15 U.S.C. §§ 2615, 2689; Pub. L. No. 94-469, 90 Stat. 2003 (1976).  Pursuant to this § 4852d(b)(5) provision, a violation of the Disclosure Rule constitutes a "prohibited act" under the Toxic Substances Act, Vidiksis, 612 F.3d at 1153, and the penalty for that violation is a fine not to exceed $10,000, 42 U.S.C. § 4852d(b)(5).

While the Lead Hazard Act makes a violation of the Lead Hazard Act a "prohibited act" under the Toxic Substances Act, it is critical here that the Toxic Substances Act itself has its own set of criminal penalties for knowing and willful violations, and yet another federal statute, 18 U.S.C. § 3561, provides for a probation term for criminal convictions.

First, as discussed below, the Toxic Substances Act has separate civil and criminal penalties.  Section 409 of the Toxic Substances Act, codified at 15 U.S.C. § 2689, states as follows: "It shall be unlawful for any person to fail or refuse to comply with a provision of this title or with any rule or order issued under this

12

title." 15 U.S.C. § 2689; see also Pub. L. No. 94-469, 90 Stat. 2003 (1976). Even though the Disclosure Rule was issued under the Lead Hazard Act, the parties do not dispute that a violation of the EPA's Disclosure Rule constitutes a prohibited, i.e., "unlawful," act under § 2689 in the Toxic Substances Act. Further, there are civil penalties for violating § 2689 which provide for only a fine as follows:

(a) Civil.

(1) Any person who violates a provision of section 15 or 409 [15 U.S.C. § 2614 or § 2689] shall be liable to the United States for a civil penalty in an amount not to exceed $25,000 for each such violation. Each day such a violation continues shall, for purposes of this subsection, constitute a separate violation of section 15 or 409 [15 U.S.C. § 2614 or § 2689].

15 U.S.C. § 2615(a)(1). Read together, the Toxic Substances Act has a civil penalty of $25,000 but the Lead Hazard Act limits this civil penalty to $10,000 for disclosure violations. See Vidiksis, 612 F.3d at 1153 n.2 (explaining that § 4852d(b)(5) limits the penalty for each violation to $10,000 but that 40 C.F.R. § 19.4 increased this to $11,000 for any violation occurring after July 28, 1997).

Second and notably, there are separate criminal penalties of a fine and up to one-year imprisonment for violating § 2689 if the violation is done knowingly and willfully, as follows:

(b) Criminal. Any person who knowingly or willfully violates any provision of section 15 or 409 [15 U.S.C. § 2614 or § 2689] shall, in addition to or in lieu of any civil penalty which may be imposed under subsection (a) of this section for such violation, be subject, upon conviction, to a fine of not more than $ 25,000 for

13

each day of violation, or to <u>imprisonment for not more than one year</u>, or both.

15 U.S.C. § 2615(b) (emphasis added); <u>see also</u> Pub. L. No. 94-469, 90 Stat. 2003 (1976). The Lead Hazard Act makes disclosure violations a prohibited act for purposes of the Toxic Substances Act and limits the civil penalty to $10,000. However, nothing in the Lead Hazard Act speaks to the criminal penalties set forth in the Toxic Substances Act for knowing and wilful violations. More importantly, nothing in the Lead Hazard Act speaks to the probationary term authorized in § 3561 for certain types of federal criminal convictions.

## C.    Shimshoni's Two-Year Probationary Sentence

With this background, our task is to determine the statutory maximum penalty applicable to defendant Shimshoni's criminal offense. As recounted earlier, defendant Shimshoni was charged with, and pled guilty to, <u>knowingly and willfully</u> failing to provide a federally approved lead-paint-hazard brochure, in violation of 15 U.S.C. §§ 2615(b) and 2689 of the Toxic Substances Act, 42 U.S.C. § 4852d(b)(5) of the Lead Hazard Act, and the Disclosure Rule, 40 C.F.R. § 745.107(a)(1).

As outlined above, the Lead Hazard Act, § 4852d(b)(5), makes a violation of a rule issued under the Lead Hazard Act also a "prohibited act" under § 2689 of the Toxic Substances Act. 42 U.S.C. § 4852d(b)(5). In turn, the Toxic Substances Act has its own set of civil and criminal penalties for a "prohibited act" depending on

14

whether or not the violation is knowing and willful.  Moreover, the probation term comes from § 3651, for criminal offenses.

Accordingly, the statutory question is whether the Lead Hazard Act and its limitation of "the penalty" to a $10,000 fine cabins not just the "civil penalty" in the Toxic Substances Act but also extinguishes (1) the separate criminal sanctions in § 2615(b) of the Toxic Substances Act which say that "in addition to or in lieu of any civil penalty" a violator may be subject to imprisonment for not more than one year, and (2) the authorized probation term in § 3561 for criminal offenses.

In such matters of statutory interpretation, we start with "the language of the statute itself."  See Randall v. Loftsgaarden, 478 U.S. 647, 656, 106 S. Ct. 3143, 3149 (1986).  The plainness or ambiguity of statutory language is determined not only by the language itself, but also by the specific context in which that language is used, and the broader context of the statute as a whole.  Yates v. United States, ___ U.S. ___, ___, 135 S. Ct. 1074, 1081-82 (2015) (plurality opinion).

The statutory language in § 4852d setting a maximum "penalty" of $10,000 for purposes of enforcing § 4852d under the Toxic Substances Act is most reasonably read to cap any civil penalty imposed pursuant to § 2615(a)—not as a prohibition on the separate criminal penalties under § 2615(b) or the probation term in § 3561.  See 15 U.S.C. § 2615; 42 U.S.C. § 4852d(b)(5).  Cf. Vidiksis, 612 F.3d at 1153 & n.2 (explaining that, "[u]nder [the Toxic Substances Act], the EPA

has the authority to seek <u>civil</u> penalties for failure to comply with the Disclosure Rule" and that "§ 4852d(b)(5) limits the penalty for each violation to $10,000" (emphasis added)).  Notably, § 4852d refers to a "penalty" and § 2615(a) refers to a "civil penalty," while § 2615(b) refers to a "fine" and "imprisonment" following conviction.  Indeed, Shimshoni's argument would render the criminal provisions of § 2615(b) superfluous and nullified if the $10,000 penalty in § 4852d(b)(5) were the sole punishment.  See <u>United States v. Ballinger</u>, 395 F.3d 1218, 1236 (11th Cir. 2005) (stating that statutes should be construed so that "no clause, sentence, or word shall be superfluous, void, or insignificant" (quotations omitted)); <u>see also</u> <u>Watt v. Alaska</u>, 451 U.S. 259, 267, 101 S. Ct. 1673, 1678 (holding that "repeals by implication are not favored") (quotations omitted).  Nothing in the statutory language of § 4852d refers to criminal penalties or probation, and thus it cannot, and does not, displace § 2615(b) or § 3561.

Shimshoni's argument that this Court in <u>Vidiksis</u> interpreted § 4852d(b)(5) in a manner that did "not contemplate or allow for a criminal penalty" is meritless.  In <u>Vidiksis</u>, this Court was expressly discussing the "civil penalties" that may be imposed for a violation of the Disclosure Rule.  See <u>Vidiksis</u>, 612 F.3d at 1153 & n.2.  And the <u>Vidiksis</u> Court limited its discussion to civil penalties because it was reviewing an administrative ruling by the Environmental Appeals Board, rather than a criminal case, and at no point did the <u>Vidiksis</u> Court address whether

16

§ 4852d(b)(5) eliminates imprisonment as a penalty for a criminal violation of the Disclosure Rule.  See id. at 1152, 1158-60.

Shimshoni also contends that, because there is "substantial ambiguity" as to whether he was subject to the statutory maximum in § 2615(b), we should apply the rule of lenity in this case and construe § 4852d as he urges.  We disagree.  We conclude that this issue is resolved by the plain language of the applicable statutory scheme, and we certainly find no "grievous ambiguity or uncertainty" that would justify application of the rule of lenity.  See Muscarello v. United States, 524 U.S. 125, 138-39, 118 S. Ct. 1911, 1919 (1998) (explaining that there must be a "grievous ambiguity or uncertainty in the statute" to apply the rule of lenity because "most statutes are ambiguous to some degree" (quotations omitted)); see also United States v. Sloan, 97 F.3d 1378, 1382 (11th Cir. 1996) (explaining that the rule of lenity applies only after the language and scheme of the penalty statute are considered).

In any event, it is § 3561, not the Toxic Substances Act, that authorizes a probation term.  At best, Shimshoni's argument is necessarily that the penalty cap of the Toxic Substances Act should be somehow read to implicitly exclude the possibility of a probation term.  However, even so, the plain language of Toxic Substances Act still does not "expressly preclude" a probation term, and, therefore, Shimshoni's sentence was authorized by § 3561.  See 18 U.S.C. § 3561(a)(2).

17

## III. CONCLUSION

For the foregoing reasons, we affirm defendant Shimshoni's two-year probationary sentence.

**AFFIRMED.**