[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 15-11667

_____

Agency No. 7019-069


EASTERN HYDROELECTRIC CORPORATION,

Petitioner,

versus

FEDERAL ENERGY REGULATORY COMMISSION,

Respondent.


_____

Petition for Review of a Decision of the
Federal Energy Regulatory Commission
_____

(April 18, 2018)

Before WILLIAM PRYOR and JULIE CARNES, Circuit Judges, and CORRIGAN,* District Judge.

JULIE CARNES, Circuit Judge:

Eastern Hydroelectric Corporation ("Petitioner") is licensed by the Federal Energy Regulatory Commission to generate hydroelectricity at the Juliette Dam, located on the Ocmulgee River outside of Juliette, Georgia. As a condition of increasing its licensed generating capacity, Petitioner agreed to design and construct a fishway, which is a facility that would allow American shad[1] to swim past the dam and gain access to upstream spawning grounds. After over a decade had passed—without significant progress on the fishway, and with Petitioner having never increased its generating capacity—the Commission revoked Petitioner's license. As a result, the dam still obstructs the shad, as it always did, but given the action taken by the Commission, the dam can no longer generate hydroelectricity. Petitioner challenges the revocation of its license. Although it is unclear what useful purpose has been served by the above course of events, we conclude that the Commission's decision to revoke Petitioner's license is

---

* Honorable Timothy J. Corrigan, United States District Judge for the Middle District of Florida, sitting by designation.

[1] American shad are anadromous fish, meaning they spend most of their lives in saltwater but swim up rivers to spawn in freshwater. U.S. Fish and Wildlife Service, Chesapeake Bay Field Office, *American Shad*, https://www.fws.gov/chesapeakebay/shad.htm.

2

authorized by law.  Accordingly, we deny the petition.

## I.    BACKGROUND

Although much could be said about the decade-and-a-half talkathon between Petitioner and the Commission over the construction of a fishway at the Juliette Dam as a condition for authorization of increased generating capacity that was never even implemented, we limit our summary of the facts to only those most essential to the disposition of this case.  In 1995, Petitioner obtained a license from the Commission to generate 643 kilowatts ("kW") of hydroelectricity at the Juliette Dam.  150 FERC 61099, 61673–74 & nn. 3–4 (2015).  In 2000, Petitioner filed an application to amend its license to increase its generating capacity.  99 FERC 62207, 64489 (2002).  The U.S. Fish and Wildlife Service, the National Marine Fisheries Service, and the Georgia Department of Natural Resources (collectively, the "Resource Agencies") recommended—and the Commission's staff agreed— that a fishway should be constructed to allow American shad to swim past the dam, giving the fish access to additional spawning grounds.  *Id.* at 64489–90.

Thereafter, in 2002, the Commission issued an order approving Petitioner's application, subject to the requirement that Petitioner design and construct a fishway.  The Commission amended Petitioner's license "to increase the total project authorized installed capacity from 643 kW to 1,843 kW."  *Id.* at 64490.

3

The Commission also amended the license to incorporate the conditions imposed by the Water Quality Certification Petitioner received from the Georgia Department of Natural Resources, which required that "a fish passage structure . . . be constructed as part of the project upgrade." *Id.* at 64492.  The Commission "added to the license" Article 401, which required Petitioner to "within 90 days from the date of the issuance of this amendment . . . file with the Commission, for approval, a plan to construct a fishway at the Juliette Dam." *Id.* at 64491.  Article 401 also required Petitioner to "prepare the plan after consultation with" the Resource Agencies and to include "(1) a fishway construction schedule; (2) a detailed description of proposed fishway design and operation; (3) a provision for consulting annually with the [Resource Agencies] to address fish passage and entrainment issues at the project; and (4) documentation of consultation with the [A]gencies." *Id.*

Over the next decade, the expected costs of the fishway began to skyrocket and Petitioner struggled to come to agreement with the Resources Agencies on the details of a fishway design.  Nevertheless, Petitioner and the Commission were twice able to come to preliminary agreement—in 2006 and 2012—on general fishway designs, with each agreement resulting in an order from the Commission directing Petitioner to submit finalized specifications and to construct the fishway.

4

After each order, Petitioner ran into problems negotiating with the Resource Agencies, neglected to submit revised specifications and plans, and failed to meet construction deadlines.  With each failure by Petitioner to meet the requirements set forth in the Commission's orders, the Commission repeatedly warned Petitioner that it was in violation of its license conditions and that the Commission could revoke Petitioner's license if it continued not to comply.  *See* 149 FERC 61036, 61143–45 (2014) (summarizing Petitioner's compliance history).

Most relevant here is the aftermath of the Commission's 2012 order.  In 2012, the Commission accepted revised fishway designs submitted by Petitioner. 141 FERC 62176, 64530–31 (2012).  Accordingly, in December 2012, the Commission issued an order approving the new design, requiring certain modifications, and setting new deadlines for Petitioner.  *Id.* at 64531–32.  Among other things, the order required Petitioner to file "[w]ithin 120 days . . . a Fishway Operation Plan which shall describe . . . a method for determining the effectiveness of the fishway following its first year of operation (i.e., are the target species finding the fishway entrance and negotiating the fishway)."  *Id.* at 64532.  The order further specified that the plan "shall be developed in consultation with" the Resource Agencies and that Petitioner "shall include with the plan documentation of consultation, copies of comments and recommendations on the completed plan

5

after it has been prepared and provided to the [R]esource [A]gencies, and specific descriptions of how the [A]gencies' comments are accommodated by the plan." *Id.*

In April 2013, after Petitioner missed the deadline to file its revisions and plans, the Commission sent Petitioner a letter instructing Petitioner to file the overdue items within fifteen days.  144 FERC 62211, 64485 (2013).  In May, Petitioner sent the Commission a construction schedule that proposed beginning construction in July, along with fishway operation plans.  *Id.*  The Commission wrote back to Petitioner that the plans did not include documentation of consultation with Resource Agencies and did not include effectiveness protocols, both of which were required by the 2012 order.  *Id.*  Petitioner responded by asking for additional time to develop effectiveness protocols in consultation with the Resource Agencies.  *Id.*  A month later, in June, the Commission informed Petitioner that, according to the Resource Agencies, Petitioner had not consulted the Agencies about the effectiveness protocols since March.  *Id.* at 64486.  The Commission advised Petitioner that, to comply with its license, Petitioner needed to file effectiveness protocols and documentation of consultation with the Resource Agencies.  *Id.*  The Commission warned Petitioner that this was a violation of its license and gave Petitioner sixty days to come into compliance.  *Id.*

6

After Petitioner failed to submit plans for effectiveness protocols and documentation of consultation with the Resource Agencies, *id.*, the Commission issued a compliance order in September 2013.  The compliance order commanded Petitioner to file within fifteen days "a plan and schedule for complying with all of the requirements of the December 7, 2012 order," including "specific protocols for monitoring the effectiveness of the fishway" and "copies of all correspondence between" Petitioner and the Resource Agencies.  *Id.*  The Commission warned that failure to comply could result in revocation of Petitioner's license.  *Id.*  Although Petitioner submitted some of the requested documents in response (such as an updated construction schedule pushing back construction another year), Petitioner did not submit documentation of consultation with the Resource Agencies or effectiveness protocols.  147 FERC 62045, 64164 (2014).  Instead, Petitioner proposed continuing discussions with the Agencies about how to measure the fishway's effectiveness.  *Id.*

Two months later, in October, the Commission issued a show cause order to Petitioner, asserting that Petitioner was in violation of its license, the 2012 order, and the 2013 compliance order.  145 FERC 62003 (2013).  The Commission ordered Petitioner to show cause why the Commission should not require Petitioner to cease power generation.  *Id.*  Petitioner responded by detailing the

7

economic reasons why it would be harmful for it to cease generation and asked for additional time to prepare the effectiveness protocols. 148 FERC 61028, 61110 (2014).

In April 2014, the Commission ordered Petitioner to cease generation. 147 FERC 62045, 64165 (2014). Over the next month and a half, the Commission sent two separate letters to Petitioner asking Petitioner to contact the Commission to resolve the matter. 148 FERC at 61110. Petitioner responded to neither. *Id.*

Accordingly, in July, the Commission issued an order proposing to revoke Petitioner's license. *Id.* The order observed that Petitioner "failed to develop fishway effectiveness protocols in consultation with" the Resource Agencies, and that Petitioner had ultimately "failed to comply with its project license and staff orders requiring the construction of required fish passage facilities." *Id.* The Commission gave Petitioner thirty days to respond and the option of requesting an evidentiary hearing. *Id.* at 61110–11. Petitioner responded by filing an untimely request for an additional twenty days to resolve its noncompliance. 149 FERC at 61145.

In October 2014, the Commission issued an order revoking Petitioner's license. The Commission found that Petitioner had "knowingly violated the September 2013 Compliance Order" by, among other things, "never develop[ing]

8

the required fishway effectiveness protocols in consultation with the" Resource Agencies. *Id.* at 61146. The Commission concluded that it had "no reason to believe that [Petitioner] intend[ed] to comply" with the Commission's orders or the license conditions. *Id.* After further describing the history of Petitioner's license and the struggle over the fishway requirements, the Commission noted that both the Fish and Wildlife Service and the National Marine Fisheries Service encouraged the Commission to revoke Petitioner's license.[2] *Id.* at 61143–46. Based on this record, the Commission concluded that revocation was appropriate and revoked Petitioner's license. *Id.* at 61146–47.

Petitioner then filed a withdrawal of its 2000 application to amend its license and a request for rehearing. 150 FERC at 61673. The Commission issued an order denying both. *Id.* at 61680. Petitioner filed for appellate review of the Commission's order under 16 U.S.C. § 825*l*.

## II.  STANDARD OF REVIEW

We must set aside agency action if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This is a "highly deferential standard." *Miami-Dade Cty. v. EPA*, 529 F.3d 1049, 1058

---

[2] The Georgia Department of Natural Resources acknowledged Petitioner's noncompliance, but recommended further deadline extensions instead of revocation. 149 FERC at 61145.

(11th Cir. 2008). We defer to the Commission's fact-finding "if supported by substantial evidence." 16 U.S.C. § 825*l*(b). And an agency's choice of sanction is "considered to be particularly within the agency's competence," so we may overturn the agency's choice only if it is either "unwarranted in law or is without justification in fact." *Vidiksis v. EPA*, 612 F.3d 1150, 1154 (11th Cir. 2010); *see also Jones Total Health Care Pharmacy, LLC v. DEA*, 881 F.3d 823, 834 (11th Cir. 2018) ("[An] agency's choice of sanction is entitled to substantial deference." (internal quotation marks omitted)).

## III.   DISCUSSION

The Federal Power Act grants the Commission authority to revoke a license so long as certain requirements are met. Under 16 U.S.C. § 823b(a), the Commission may, "[a]fter notice and opportunity for public hearing . . . issue such orders as necessary to require compliance with the terms and conditions of licenses." If the licensee violates a compliance order, then the Commission, "[a]fter notice and opportunity for an evidentiary hearing . . . may also issue an order revoking any license issued under this subchapter." *Id.* § 823b(b). To do so, the Commission must find the licensee: (1) "to have knowingly violated a final order issued under subsection (a) . . . and (2) to have been given reasonable time to comply fully with such order prior to commencing any revocation proceeding." *Id.*

10

And "[n]o order shall be issued under this subsection until after the Commission has taken into consideration the nature and seriousness of the violation and the efforts of the licensee to remedy the violation." *Id.*

Petitioner argues the Commission was not authorized to revoke its license because Petitioner did not knowingly violate the 2013 compliance order, Petitioner lacked sufficient notice, and the Commission failed to take into consideration the nature of Petitioner's violations and Petitioner's efforts to remedy the situation. The record, however, supports the Commission.

The Commission revoked Petitioner's license for "knowingly violat[ing] the September 2013 Compliance Order," because, among other things, Petitioner "never developed the required fishway effectiveness protocols in consultation with the" Resource Agencies. 149 FERC at 61146. That compliance order required Petitioner to "file, within 15 days . . . a plan . . . for complying with all of the requirements of the December 7, 2012 order. . . . includ[ing] . . . specific protocols for monitoring the effectiveness of the fishway." 144 FERC at 64486. The order also specified that "[t]he plan . . . shall include copies of all correspondence between [Petitioner] and [the Resource Agencies] concerning the specific requirements of the December 7, 2012 order." *Id.* And the 2012 order, which the compliance order enforced, also expressly laid out consultation as a requirement

11

for setting effectiveness protocols as part of the fishway operation plan.  It required that the "Fishway Operation Plan . . . describe . . . a method for determining the effectiveness of the fishway" and be "developed in consultation with" the Resource Agencies.  141 FERC at 64532.  In addition, the 2012 order specified that Petitioner "shall include with the plan documentation of consultation, copies of comments and recommendations on the completed plan after it has been prepared and provided to the [R]esource [A]gencies, and specific descriptions of how the [A]gencies' comments are accommodated by the plan." *Id.*  Petitioner was also required to provide "a minimum of 30 days for the agencies to comment and to make recommendations before filing the plan with the Commission."  *Id.*

The record shows that Petitioner understood these requirements at the time the compliance order was issued.  Petitioner stated in its response to the compliance order that it had "actively discussed" the effectiveness protocols with the Resource Agencies.  And Petitioner "propose[d]" to "continue discussions to reach the best reasonable and practical monitoring procedure which we can anticipate."  Further, before the compliance order was issued, the Commission sent Petitioner two letters expressly stating that the 2012 order required Petitioner to consult with the Resource Agencies over the effectiveness protocols and to provide documentation of such consultations.

Because Petitioner never submitted effectiveness protocols or documentation of its consultation with the Resource Agencies, Petitioner violated the compliance order. And, as described above, substantial evidence supports the Commission's conclusion that the violation was done knowingly. The record also shows that Petitioner was given adequate notice and opportunity to be heard and that the Commission took into consideration the nature and seriousness of Petitioner's violation and its compliance efforts. Accordingly, the Commission was authorized under § 823b to revoke Petitioner's license.

Petitioner makes some other arguments as to why the Commission could not lawfully revoke its license, but none are persuasive. Petitioner argues that the fishway requirements are not part of its license or, if they are, they are tied to its increased generating capacity so that only the authorization for increased capacity can be revoked, not the license in its entirety. The provisions of the license, however, clearly contradict this argument. Petitioner's amended license states unambiguously in Article 401 that Petitioner was required to "file with the Commission, for approval, a plan to construct a fishway at the Juliette Dam" prepared "after consultation" with the Resources Agencies and to include "documentation of consultation with the [A]gencies." 99 FERC at 64491. Article

13

401 is a general condition of the license, not tied to only the added generating capacity.

Petitioner's above argument is really another way of saying that Petitioner would like to return to the status quo in place prior to 2002 when the Commission approved Petitioner's application to increase its generating capacity. We can understand Petitioner's desire to undo what has turned out to be an ill-advised application on its part. Had Petitioner never sought to increase its generating capacity, the Commission would not have required Petitioner to construct the fishway that has become so problematic. And given how arduous were the negotiations to construct the fishway and how prohibitive Petitioner came to perceive the costs for that project to be, combined with the fact that Petitioner never even increased its generating capacity, it is understandable why Petitioner would now like to go back to where the parties were pre-2002. That is, Petitioner's dam would continue to operate at the same generating capacity in effect at the time—and observed since that time—and no fishway would be required to be built.

The problem for Petitioner in trying to achieve what it now believes to be a common sense resolution to the fishway quagmire is Petitioner's own failure to take the appropriate steps necessary to do so. The Commission repeatedly told Petitioner that it could apply to amend its license to remove the increased

14

generating capacity and the fishway requirements, but Petitioner never did so. Only after the Commission issued the order revoking Petitioner's license did Petitioner attempt to withdraw the application to amend that it had submitted fourteen years earlier:  an application that the Commission had long ago granted.

Petitioner contends that this attempted withdrawal was effective based on 18 C.F.R. § 385.216.  That regulation allows a party to "withdraw a pleading by filing a notice of withdrawal" that becomes effective if no motion in opposition or order disallowing withdrawal is filed within fifteen days.  *Id.*  Yet Petitioner cites no authority to suggest that withdrawal of an application to amend that was long ago granted can serve to unilaterally void the amendment.  At best, Petitioner argues that the Commission has previously accepted a notice of withdrawal years after it issued a license.  But in the only such example cited by Petitioner, the applicant "filed a timely request for rehearing" and never actually "accept[ed] the license." *Puget Sound Energy, Inc.*, 106 FERC 62038, 64078 (2004).  And the Commission has previously disallowed automatic withdrawal where doing so raised concerns that the licensee was attempting "to make unilateral amendments to [its] license." *Falls Hydro Associates*, 38 FERC 61147, 61388 (1987).  Most importantly, unilateral amendment of a license is prohibited by statute.  *See* 16 U.S.C. § 799 ("Licenses . . . may be altered or surrendered only upon mutual agreement between

15

the licensee and the Commission after thirty days' public notice.").  Accordingly, Petitioner's attempt to withdraw its fourteen-year old application to amend did not affect the Commission's revocation of the amended license.

Petitioner also argues that the changes in some details of the requirements for the fishway constituted impermissible unilateral changes to its license.  *See id.* (licenses "shall be conditioned upon acceptance by the licensee of all of the terms and conditions of this chapter and such further conditions, if any, as the Commission shall prescribe in conformity with this chapter").  Yet, Petitioner agreed to the fishway requirements in the original 2002 amendment and to the specific requirements in the 2012 amendment order that the compliance order enforced.

Finally, we do not find the Commission's revocation of Petitioner's license to be a "flagrant departure" from the Commission's past enforcement decisions cited by Petitioner.[3]  *See Jones Total Health Care Pharmacy*, 881 F.3d at 834.

---

[3]  Petitioner also argues that the Commission is estopped from revoking its license.  This argument was not raised in Petitioner's request for rehearing and therefore we cannot consider it.  16 U.S.C. § 825*l*(b) ("No objection to the order of the Commission shall be considered by the court unless such objection shall have been urged before the Commission in the application for rehearing unless there is reasonable ground for failure to do so.").

## CONCLUSION

For the above reasons, we conclude that the Commission's revocation of

Petitioner's license was lawful and we **DENY** Petitioner's petition.

17