[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-11168
Non-Argument Calendar
_____

Agency No. 15-17

PHARMACY DOCTORS ENTERPRISES, INC.,
d.b.a. Zion Clinic Pharmacy,

Petitioner,

versus

DRUG ENFORCEMENT ADMINISTRATION,

Respondent.

_____

Petition for Review of a Decision of the
Drug Enforcement Agency
_____

(September 20, 2019)

Before MARCUS, ROSENBAUM and JILL PRYOR, Circuit Judges.

PER CURIAM:

Pharmacy Doctors Enterprises, Inc. ("Pharmacy Doctors"), a retail pharmacy, petitions for review of a decision by the Acting Administrator of the U.S. Drug Enforcement Administration (DEA) pursuant to the Controlled Substances Act ("CSA"), to revoke its registration to dispense controlled substances and deny any pending application for renewal of registration.[1] 21 U.S.C. §§ 823(f), 824(a).  The Acting Administrator revoked Pharmacy Doctors' registration after a hearing before an administrative law judge (ALJ) revealed that it had filled prescriptions for controlled substances in violation of federal and state law and that its owner and operator, Veronica Taran, exhibited ignorance of her legal and professional duties as a pharmacist.  Pharmacy Doctors argues that the ALJ presiding at the hearing was improperly appointed under the Appointments Clause, the Acting Administrator lacked substantial evidence for his findings, and his revocation of Pharmacy Doctors' registration was arbitrary and capricious.  After careful consideration, we deny the petition for review.

## I.    FACTUAL, PROCEDURAL, AND STATUTORY BACKGROUND

The CSA makes it "unlawful for any person knowingly or intentionally . . . to . . . distribute[] or dispense . . . a controlled substance" except "as authorized" by the CSA.  *Id.* § 841(a)(1).  One of the CSA's exceptions is for pharmacies

---

[1] *Pharmacy Doctors Enters. d/b/a Zion Clinic Pharmacy Decision and Order*, 83 Fed. Reg. 10,876, 10,903 (DEA, Mar. 13, 2018).

registered with the Attorney General, *id.* § 822(a), which may "dispense" or "deliver a controlled substance to an ultimate user . . . pursuant to the lawful order of[] a practitioner," *id.* § 802(10).  By DEA regulation, a lawful order of a practitioner is one that is "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice."  21 C.F.R. § 1306.04(a).  That regulation imposes a responsibility on the prescriber to ensure prescriptions comply with the law and also a "corresponding responsibility" on the "pharmacist who fills the prescription" to ensure that the prescription is valid.  *Id.*  A pharmacist who "knowingly fill[s]" a prescription not issued "for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice" is subject to penalties under the CSA.  *Id.*

The Attorney General has delegated to the DEA Administrator the authority to issue, deny, suspend, and revoke pharmacy registrations.  28 C.F.R. § 0.100(b).  Registration may be denied or revoked when it is or would be "inconsistent with the public interest."  21 U.S.C. §§ 823(f), 824(a)(4).

Here, the DEA served on Pharmacy Doctors an order to show cause, *see id.* § 824(c)(1); 21 C.F.R. § 1301.37, alleging that Pharmacy Doctors was dispensing controlled substances in violation of federal and state law and proposing to revoke its registration, 21 U.S.C. § 824(a)(4), and deny any pending application for renewal of its registration, *id.* § 823(f).

3

As was its right under the CSA and the Administrative Procedure Act (APA), Pharmacy Doctors requested a hearing, *see id.* § 824(c)(4); 5 U.S.C. § 554(c)(2); 21 C.F.R. §§ 1301.37(d), 1301.41(a), at which the parties presented documentary evidence and the ALJ heard testimony from the government's expert Tracey Gordon, Pharmacy Doctors' expert Louis Fisher, Taran, and a DEA investigator. We describe the relevant aspects of the evidence and testimony in Part III. After the hearing, the ALJ recommended that the Acting Administrator revoke Pharmacy Doctors' registration and deny any pending applications for renewal because registration would be "inconsistent with the public interest." 21 U.S.C. §§ 823(f), 824(a)(4).

The Acting Administrator agreed with the ALJ and issued an order revoking Pharmacy Doctors' registration and denying any pending applications for renewal. Pharmacy Doctors petitioned for review of the Acting Administrator's decision.[2] *Id.* § 877.

## II.    STANDARDS OF REVIEW

We review *de novo* questions of law, including the constitutionality of the ALJ's appointment. *Sec. & Exch. Comm'n v. Graham*, 823 F.3d 1357, 1360 (11th Cir. 2016).

---

[2] In its briefing on appeal, Pharmacy Doctors does not challenge the Acting Administrator's decision to deny any pending application to renew its registration. *See* 21 U.S.C. § 823(f).

4

"The Acting Administrator's factual findings are conclusive if supported by substantial evidence." *Jones Total Health Care Pharmacy, LLC v. Drug Enf't Admin.*, 881 F.3d 823, 829 (11th Cir. 2018) (citing 21 U.S.C. § 877). Substantial evidence, which is a standard lower than a preponderance of the evidence, is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* "An administrative agency's finding is supported by substantial evidence even if two inconsistent conclusions could be drawn from the evidence." *Id.* (alteration adopted) (internal quotation marks omitted).

Under the APA, we may set aside the Acting Administrator's final decision if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "contrary to [a] constitutional right," or "unsupported by substantial evidence." 5 U.S.C. § 706(2)(A)-(B), (E). "The arbitrary and capricious standard is exceedingly deferential." *Jones Total*, 881 F.3d at 829 (internal quotation marks omitted). "We may not substitute our judgment for that of the agency so long as its conclusions are rational and based on the evidence before it." *Id.* "Nevertheless, we may set aside a decision as arbitrary and capricious when, among other flaws, the agency has relied on factors [that] Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, or offered an explanation for its decision that runs counter to the evidence before the agency." *Id.* (alteration adopted) (internal quotation marks omitted).

5

### III.    DISCUSSION

Pharmacy Doctors raises three grounds for why we should set aside the Acting Administrator's decision:  (1) the ALJ who presided over the hearing was invalidly appointed under the Appointments Clause; (2) the Acting Administrator lacked substantial evidence for his factual findings; and (3) the Acting Administrator's decision to revoke Pharmacy Doctors' registration was arbitrary and capricious.  We reject each argument and accordingly deny Pharmacy Doctors' petition for review.

### A. We Decline to Excuse Pharmacy Doctors' Forfeiture of its Appointments Clause Argument.

The Appointments Clause requires that "Officers of the United States" be appointed by the President, a court of law, or a head of a department.  U.S. Const., art. II, § 2, cl. 2.  Citing a recent Supreme Court case holding that ALJs of the Securities and Exchange Commission are "Officers of the United States" whose appointments must comply with the Appointments Clause, *see Lucia v. S.E.C.*, 138 S. Ct. 2044, 2049, 2054 (2018), Pharmacy Doctors argues that DEA ALJs are also "Officers of the United States" whose appointments must comply with the Clause.  Because the ALJ who presided over the hearing was not appointed by the

6

President, a court of law, or a department head, Pharmacy Doctors contends, a remand for a new hearing before a properly appointed ALJ is required.

Pharmacy Doctors concedes, however, that it failed to timely challenge the validity of the ALJ's appointment. "Under ordinary principles of administrative law, a reviewing court will not consider arguments that a party failed to raise in timely fashion before an administrative agency." *Mahon v. U.S. Dep't of Agric.*, 485 F.3d 1247, 1254 (11th Cir. 2007) (internal quotation marks omitted). "[W]here the parties are expected to fully develop the issues during the course of an adversarial administrative proceeding, the rationale for requiring issue exhaustion is at its strongest." *Id.* at 1255.

"Although there is no express issue exhaustion requirement in the [CSA or DEA] regulations, a review of the [CSA and DEA regulations] reveals that [DEA] proceedings are 'adversarial' in nature." *Id.* at 1256. Under the supervision of the DEA Administrator, the ALJ may subpoena and compel the attendance and testimony of witnesses, require the production of records relevant to an investigation, administer oaths, and receive evidence. 21 U.S.C. §§ 875(a), 876(a); *see also* 28 C.F.R. § 0.100(b). Parties may present "[e]xtensive argument" in "opening [and] closing statements[,] . . . memoranda[,] [and] proposed findings of fact and conclusions of law." 21 C.F.R. § 1301.42. The government bears the burden to show that registration violates or would violate the CSA. *Id.*

7

§ 1301.44(d)-(e).  And the DEA Administrator's order denying or revoking a registration must "include the findings of fact and conclusions of law upon which the order is based."  *Id.* § 1301.46; *see also Mahon*, 485 F.3d at 1249, 1256 (considering similar features of the U.S. Department of Agriculture's process for evaluating applications for federal disaster assistance to determine whether that process was "'adversarial' in nature").

Given these features, the DEA's "procedures provide an adversarial system in which parties are given a full and fair opportunity to make their arguments and present evidence, and, as a corollary, to attempt to challenge the arguments and evidence presented by the agency."  *Id.* at 1256.  "As such, the adversarial nature of the administrative proceedings counsel against allowing [Pharmacy Doctors] to raise [a] new argument[] that w[as] not raised during the course of [its] administrative appeal" to the Acting Administrator.  *Id.*  Because arguments based on the Appointments Clause are nonjurisdictional and therefore subject to the ordinary rules of forfeiture, *see Freytag v. Comm'r*, 501 U.S. 868, 878-79 (1991); *see also id.* at 893-94 (Scalia, J., concurring in part and concurring in judgment), we conclude that Pharmacy Doctors has forfeited its Appointments Clause challenge.

We reject Pharmacy Doctors' argument that we should excuse its forfeiture based on *Jones Bros. v. Secretary of Labor*, 898 F.3d 669 (6th Cir. 2018), in which

the Sixth Circuit excused a forfeiture of an Appointments Clause challenge to a Federal Mine Safety and Health Review Commission ALJ's authority to uphold civil penalties. *Id.* at 672. Even if we assume that the Sixth Circuit's approach was sound, two facts distinguish this case. First, the statute at issue in *Jones Brothers* explicitly permitted excusal in "extraordinary circumstances." 30 U.S.C. § 816(a)(1). Pharmacy Doctors cites and we have found no analogous provision in the CSA. Second, Jones Brothers raised, at least in a cursory manner, its Appointments Clause challenge in its appeal of the ALJ's decision to the Commission. *Jones Bros.*, 898 F.3d at 673, 678. In contrast, Pharmacy Doctors failed to make even a cursory argument regarding the Appointments Clause to the Acting Administrator. Pharmacy Doctors' reliance on *Jones Brothers* thus fails to aid its argument that we should excuse its forfeiture.

Likewise, Pharmacy Doctors' argument that its Appointments Clause challenge was unavailable before the Supreme Court decided *Lucia* is without merit. The availability of an argument does not depend on whether a court has already issued a decision addressing that exact argument. Moreover, the Supreme Court held that *Freytag*, a case decided 24 years before the DEA served the order to show cause on Pharmacy Doctors, "sa[id] everything necessary to decide" the Appointments Clause challenge at issue in *Lucia*, 138 S. Ct. at 2053, so Pharmacy

9

Doctors may not credibly argue that an Appointments Clause challenge was unavailable when it appeared before the DEA.

## B. Substantial Evidence Supports the Acting Administrator's Factual Findings.

As noted above, the Acting Administrator may revoke a pharmacy's registration under the Controlled Substances Act when the pharmacy "has committed such acts as would render [its] registration . . . inconsistent with the public interest." 21 U.S.C. § 824(a)(4); *see also id.* § 823(f). "The government bears the initial burden of proving that registration is inconsistent with the public interest." *Jones Total*, 881 F.3d at 830 (citing 21 C.F.R. § 1301.44(d)-(e)). "If the government proves its *prima facie* case, the burden of proof shifts to the registrant to show why it can be trusted with a registration." *Id.* Pharmacy Doctors contends that the Acting Administrator lacked substantial evidence for his findings that (1) the government made out a *prima facie* case that continued registration would be "inconsistent with the public interest," 21 U.S.C. §§ 823(f), 824(a)(4), and (2) Pharmacy Doctors failed to rebut the government's *prima facie* case by accepting responsibility. We disagree.

### 1. The Government's *Prima Facie* Case

To determine whether the government has made a *prima facie* case that continued registration or granting an application would be inconsistent with the

public interest, the Acting Administrator must consider five statutory factors, "though he need not make explicit findings as to each one and [may] give each factor the weight he determines is appropriate." *Jones Total*, 881 F.3d at 830 (alteration adopted) (internal quotation marks omitted); 21 U.S.C. § 823(f) (statutory factors). Here, the Acting Administrator made explicit findings as to two of the factors: "[t]he applicant's experience in dispensing[] or conducting research with respect to controlled substances" and "[c]ompliance with applicable State, Federal, or local laws relating to controlled substances." *Id.* § 823(f)(2), (4). After detailing five ways in which Pharmacy Doctors had violated federal and state law, the Acting Administrator determined that the government met its *prima facie* burden to show that continued registration would be "inconsistent with the public interest." *Id.* § 824(a)(4). Substantial evidence supports each of these five findings.[3]

First, Pharmacy Doctors violated a DEA regulation requiring pharmacists to store controlled substance prescriptions in a "readily retrievable" manner. 21 C.F.R. § 1304.04(h)(3)-(4); *see also id.* § 1300.01(b) (defining "[r]eadily retrievable"). When a DEA investigator requested during an unannounced inspection to see several prescriptions Pharmacy Doctors had filled within the previous two years, it was unable to retrieve them. Second, Pharmacy Doctors

---

[3] Unless otherwise noted, all facts described in Part III.B of our opinion are undisputed.

shipped controlled substances out of state without complying with those states' non-resident pharmacy licensing requirements. Third, Pharmacy Doctors filled controlled substance prescriptions that lacked basic identifying information about the patient, prescriber, the drug, and instructions for its use, despite a DEA regulation requiring pharmacists to ensure that all prescriptions bore this information. *See id.* § 1306.05(a), (f). Fourth, Pharmacy Doctors failed to report several controlled substance prescriptions to Florida's electronic drug-monitoring system, in violation of Florida law. Fla. Stat. § 893.055. That each of these facts is undisputed shows that the Acting Administrator had substantial evidence to support these findings.

Fifth, Pharmacy Doctors failed to comply with its "corresponding responsibility," noted above in Part I, to ensure that it filled only those prescriptions "issued for a legitimate medical purpose by an individual practitioner acting in the usual course of his professional practice." 21 C.F.R. § 1306.04(a). The government sought to prove that Pharmacy Doctors violated its corresponding responsibility by engaging in conduct that amounted to willful blindness: filling prescriptions even though they raised "red flags"—indicia that the prescription was not issued for a legitimate medical purpose and would likely be diverted to non-medical uses. *See Jones Total*, 881 F.3d at 828.

For example, Pharmacy Doctors filled:  several prescriptions presented by customers traveling hundreds of miles roundtrip; in fewer than two hours, several prescriptions written by the same doctor on the same day for the same strength of the same drug; within five minutes, two prescriptions written by the same doctor on the same day for the same drug for two individuals with the same last name and street address; several prescriptions for two drugs that, taken together, would make a "cocktail" for recreational rather than medical use; and several prescriptions at least five days before the customers should have finished their previous prescription, including 12 prescriptions for one customer for the same drug within a span of four months.  In addition, Pharmacy Doctors accepted cash in exchange for filling at least 50 prescriptions; in at least one instance, it increased the price by over $150 for the same quantity of the same drug sold to the same customer less than a month later.  According to Gordon, the price increase indicated that Taran knew the drug would be diverted and that she was taking advantage of a customer who would pay any price to obtain the drug.

Many of the prescriptions detailed above were for Dilaudid, the brand name version of hydromorphone, a Schedule II opiate that Taran admitted was a "high risk medication" subject to "a lot of diversion."  Gov't App'x, Tr. at 1116, 1129; *see also* 21 C.F.R. § 1308.12(b)(vii).

13

With one exception,[4] Gordon and Fisher both testified that each of the examples of alleged red flags did indeed raise red flags. Rather than taking and documenting steps to resolve these red flags or refusing to fill prescriptions with unresolvable red flags, however, Pharmacy Doctors filled all of these prescriptions without submitting any documentation that it had resolved the red flags. Pharmacy Doctors' awareness of the risk of diversion combined with its failure to take meaningful steps to ensure that the prescriptions it filled were for legitimate medical uses together demonstrate willful blindness to how its dispensing practices facilitated diversion. Therefore, substantial evidence supports the Acting Administrator's finding that Pharmacy Doctors failed to comply with its corresponding responsibility not to fill prescriptions written for illegitimate purposes. *Id.* § 1306.04(a).

None of Pharmacy Doctors' counterarguments regarding the government's *prima facie* case undermines or contradicts the substantial evidence summarized above. Pharmacy Doctors argues that it resolved red flags by speaking to the prescribing practitioners, but Taran admitted that she did not always speak with the prescribing doctors when red flags were present. It also argues that it checked

---

[4] Regarding the allegation that Pharmacy Doctors filled prescriptions that would enable customers to make drug cocktails for non-medical uses, Fisher thought that, to be a cocktail, a third drug was required. Nevertheless, he admitted that Pharmacy Doctors would not know if customers obtained the third drug from another pharmacy because it lacked access to Florida's electronic drug-monitoring system.

14

prescribers' medical licenses and DEA registration, had customers sign affidavits to verify their relationship with the prescribing doctor, and tried to verify that the prescribers' signatures matched the signatures on the prescriptions. Yet it offers no explanation for how these steps ensured that it filled only those prescriptions issued for legitimate medical purposes.

Next, Pharmacy Doctors protests that no Florida law required documentation of a red flag, but regardless of whether that is true, the prevailing professional standard as attested to by *both* Gordon *and* its own expert, Fisher, was that pharmacists should document their resolution of red flags. Therefore, substantial evidence supports the Acting Administrator's finding that Pharmacy Doctors' failure to document its resolution of red flags was part and parcel of its failure to comply with the "corresponding responsibility" requirement. *Id.*

In addition, Pharmacy Doctors avers that the DEA itself has held that the lack of documentation of resolution of a red flag is "not evidence that a pharmacist failed to resolve a red flag." Appellant's Br. at 53. This is false. Although the DEA has held that a lack of documentation of resolution of a red flag *on the prescription itself* is not conclusive proof of failure to resolve the red flag, those decisions make clear that the absence of *any* documentation of resolution of a red flag is probative of a failure to resolve it. *See Hills Pharmacy, LLC Decision and Order*, 81 Fed. Reg. 49,816, 49,836 (DEA July 28, 2016) ("[T]he absence of

15

documentation on the prescriptions is clearly probative evidence that Respondent's pharmacists failed to resolve the strong suspicion presented by many of the prescriptions . . . ."); *Superior Pharmacy I & Superior Pharmacy II Decision and Order*, 81 Fed. Reg. 31,310, 31,335 (DEA May 18, 2016) ("[I]t would be reasonable to draw an adverse inference that a pharmacist failed to resolve a red flag (or flags) from the failure to document the resolution in any manner . . . .").

Pharmacy Doctors also contends that the Acting Administrator's reliance on DEA decisions published after the conduct at issue here had ended was arbitrary and capricious because it lacked notice of those decisions. We reject this argument because the determination of whether Pharmacy Doctors had notice of a particular professional obligation relevant to the "corresponding responsibility" requirement, 21 C.F.R. § 1306.04(a), depends not on whether the DEA happens to have published a decision that recognizes a certain practice as a professional standard but instead on the facts adduced in the agency proceeding. Here, the Acting Administrator had substantial *undisputed* evidence to support his finding that Pharmacy Doctors failed to comply with prevailing professional standards as attested to by *both* Gordon *and* its own expert, Fisher.

Lastly, Pharmacy Doctors' efforts to distinguish its conduct from the conduct at issue in DEA decisions predating the hearing are also meritless. To

16

make out a *prima facie* case, the government need not review patient files.[5]  Nor does the government need to prove that Pharmacy Doctors' misconduct was similar to misconduct committed by other pharmacies sanctioned by the DEA, such as:  two people served by a pharmacy died the day after it dispensed controlled substances, the pharmacist was told by customers that other pharmacies would not fill the same prescriptions, customers traveled from out of state to patronize the pharmacy, the pharmacist-in-charge admitted that customers might be reselling their pills, the pharmacy refilled prescriptions without prescriber authorization, or customers were doctor-shopping.[6]  These are distinctions without a difference.  A pharmacist can violate the "corresponding responsibility" requirement even if none of these specific facts characterizes its own conduct.  *Id.* All of Pharmacy Doctors' counterarguments regarding the government's *prima facie* case are meritless.

In sum, given the plentiful instances of Pharmacy Doctors breaking federal and state law in filling prescriptions with indicia that the drugs would be used for

---

[5] *George C. Aycock, M.D. Revocation of Registration*, 74 Fed. Reg. 17,529, 17,533, 17,542 (DEA, Apr. 15, 2009).

[6] *See East Main St. Pharmacy Affirmance of Suspension Order*, 75 Fed. Reg. 66,149, 66,155, 66,164 (DEA Oct. 27, 2010) (customers died; pharmacy knew other pharmacies refused to fill same prescriptions); *Holiday CVS, L.L.C., d/b/a CVS/Pharmacy Nos. 219 & 5195 Decision and Order*, 77 Fed. Reg. 62,316, 62,318, 62,330 (DEA Oct. 12, 2012) (customers traveled from out of state; pharmacy knew customers might be reselling pills); *Grider Drug #1 & Grider Drug #2 Decision and Order*, 77 Fed. Reg. 44,070, 44,073-74, 44,099 (DEA July 26, 2012) (pharmacy refilled prescriptions without prescriber authorization; customers were doctor-shopping).

non-medical uses, substantial evidence supports the Acting Administrator's findings that Pharmacy Doctors' conduct was "egregious" and that its "experience in dispensing" and "compliance with applicable State[] [and] Federal . . . laws relating to controlled substances" counseled against registration.  21 U.S.C. §§ 823(f)(2), (4).[7]  Thus the Acting Administrator properly found that the government met its burden to show a *prima facie* case that continued registration would be "inconsistent with the public interest."  *Id.* § 824(a)(4).

### 2. Pharmacy Doctors' Rebuttal

"[T]he DEA may properly consider a registrant's acceptance of responsibility in determining if registration should be revoked."  *Jones Total*, 881 F.3d at 830.  "If a pharmacy has failed to comply with its responsibilities in the past, it makes sense for the agency to consider whether the pharmacy will change its behavior in the future."  *Id.* at 831.

Substantial evidence supports the Acting Administrator's finding that Pharmacy Doctors failed to accept responsibility.  For example, Taran denied that red flags arose from customers traveling long distances to fill prescriptions and multiple customers from the same address presenting the same prescriptions—even

---

[7] Pharmacy Doctors argues that it complied with Florida law's requirements for dispensing controlled substances and needed to do no more to comply with the CSA.  Having failed to raise this argument to the agency, Pharmacy Doctors has forfeited it, and we decline to address it.  *See Mahon*, 485 F.3d at 1254-56.

though Gordon and Fisher both agreed that these were red flags. Taran's "refusal to admit that [Pharmacy Doctors'] dispensing practices violated its obligations under federal law . . . supports the factual finding . . . that [Taran] did not fully understand her legal obligations as a pharmacist." *Jones Total*, 881 F.3d at 832; *see also* 21 C.F.R. § 1306.04(a). It is not "unreasonable for the DEA to expect a pharmacist entrusted with dispensing highly regulated, addictive, and potentially destructive substances to fully understand her obligations under the law." *Jones Total*, 881 F.3d at 832.

Moreover, when asked to describe the conduct for which she accepted responsibility, Taran's only response at the hearing was that she "d[id]n't have any intention to violate DEA rules." Appellant's App'x, Tab 8, Tr. at 1025. But Taran "could have maintained that the misconduct was not intentional while, at the same time, recognizing . . . that it nonetheless violated the pharmacy's obligations under the CSA. . . . [H]er failure to clearly acknowledge even unintentional misconduct demonstrated a lack of understanding of her legal obligations." *Jones Total*, 881 F.3d at 833.

"Because the record supports the Acting Administrator's findings that [Taran] . . . did not understand the scope of her responsibilities under the CSA, we conclude that the [Acting Administrator's] determination that [Taran] did not fully accept responsibility for [Pharmacy Doctors'] misconduct was rational and

supported by substantial evidence." *Id.* Thus substantial evidence supports the Acting Administrator's finding that Pharmacy Doctors failed to rebut the government's *prima facie* case that its registration would be "inconsistent with the public interest." 21 U.S.C. §§ 823(f), 824(a)(4).

## C. The Acting Administrator's Decision to Revoke Pharmacy Doctors' Registration, Without Considering Its Remedial Steps, Was Neither Arbitrary Nor Capricious.

The Acting Administrator declined to consider whether Pharmacy Doctors took any remedial steps because Taran's lack of understanding of her legal and professional obligations made it "difficult (even illogical) to predict improvement." The Acting Administrator's reasoning makes sense. "If a pharmacy shows that it does not understand the extent of the past misconduct or its current responsibilities under the law, the DEA rationally could doubt that the pharmacy would faithfully comply in the future with its obligations under the CSA." *Jones Total*, 881 F.3d at 833. We therefore conclude that the Acting Administrator's "refusal to consider [Pharmacy Doctors'] remedial measures does not render its decision arbitrary or capricious." *Id.* at 830.

Likewise, given the extent of its misconduct and Taran's testimony as to her lack of understanding of "the scope of a pharmacist's obligations under the CSA, . . . the Acting Administrator's decision to revoke [Pharmacy Doctors'] registration [and deny its application for renewal] as inconsistent with the public interest was

20

not arbitrary, capricious, or an abuse of discretion." *Id.* at 833-34; *see also* 21 U.S.C. §§ 823(f), 824(a).

We reject Pharmacy Doctors' argument that a sanction less extreme than revocation of registration was warranted. "Under the APA, the agency's choice of sanction is entitled to substantial deference" and "is not to be overturned unless it is unwarranted in law or without justification in fact," though it may be set aside "if it represents a flagrant departure from agency policy and practice." *Jones Total*, 881 F.3d at 834 (internal quotation marks omitted). Pharmacy Doctors cites no "decision in which the DEA has continued a registration despite finding that the registrant did not fully accept responsibility." *Id.* Because we have already concluded that "substantial evidence supports the DEA's finding that [Taran] did not accept responsibility for the misconduct in this case, [Pharmacy Doctors] ha[s] not shown that the agency's choice of sanction represented a flagrant departure from prior practice." *Id.* Thus the Acting Administrator's choice of sanctions was not arbitrary, capricious, or an abuse of discretion.

## IV.   CONCLUSION

For the foregoing reasons, we deny the petition for review.

**PETITION DENIED.**